UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JIM SCHUMACHER, LLC,                       )
                                           )
                  Plaintiff,               )
                                           )
v.                                         )          No. 3:12-CV-625
                                           )
SPIREON, INC., and PROCON, INC.,           )
                                           )
                  Defendants.              )

## MEMORANDUM OPINION & ORDER

Defendants Spireon, Inc. and Procon, Inc. (collectively "defendants") have filed a motion for partial summary judgment [Doc. 53] requesting dismissal of plaintiff's breach of contract and fraud claims. Defendants have filed a memorandum of law [Doc. 55] and a statement of undisputed material facts [Doc. 54] in support of the motion. Plaintiff Jim Schumacher, LLC has filed a response in opposition to the pending motion [Doc. 65], along with a memorandum of law [Doc. 67] and a response to the statement of undisputed material facts [Doc. 66]. Defendants have replied to plaintiff's response [Doc. 74] and to plaintiff's statement of additional material facts [Doc. 75]. Thus, the motion has been thoroughly briefed and is ripe for determination.

After careful consideration of the pending motion and relevant pleadings, the defendants' motion [Doc. 53] will be **DENIED as to the breach of contract claim and GRANTED in part and DENIED in part as to the fraud claim**.

## I. Relevant Facts

Jim Schumacher, LLC ("Schumacher") is a California Limited Liability Company operating out of Costa Mesa, California, with its sole principal being Jim Schumacher, a citizen of California [Doc. 31 at ¶ 1]. In the fall of 2005, Schumacher was approached by a representative of Procon, Inc., about becoming a reseller of defendants' vehicle location devices [*Id* at ¶ 8]. After testing a few of the devices, Schumacher agreed to become a reseller for defendants and entered into a contract with defendants entitled "2005 Agreement between Procon, Inc. and Jim Schumacher, LLC" (the "2005 Agreement") on or about November 21, 2005 [*Id*. at ¶¶ 8—9].[1]

Critical to the instant dispute, the 2005 Agreement states that "[a]ll customers Jim Schumacher LLC brings in are the property of Jim Schumacher LLC" [Doc. 31-1]. Mr. Schumacher contends that this provision was put in the agreement to protect him from Procon taking his customers [Doc. 66-1 at ¶ 4]. Plaintiff contends that the 2005 Agreement was the only operative agreement between the parties. Plaintiff also contends that the 2005 Agreement did not restrict plaintiff from selling products manufactured by companies other than defendants [*Id.* at ¶ 7].

Defendants use a customer portal website through which resellers, such as Schumacher, manage their purchases, sales, and customer data [Doc. 54-1 at ¶ 5]. Resellers must also use the portal to activate and register new devices before the end-user

---

[1]Plaintiff alleges that it initially contracted with defendant Procon, Inc., which later became an entity known as Procon GPS, Inc., and still later became Spireon, Inc. [Doc. 31 at ¶ 19]. Plaintiff also alleges that Procon GPS, Inc. and Spireon assumed the obligations of Procon, Inc. under the parties' initial agreement [*Id*. at ¶ 20], a point that defendants do not contest for purposes of the pending motion [*see* Doc. 53 at n.1].

can operate those devices [*Id.* at ¶ 6]. It appears undisputed that Schumacher used the portal until sometime in 2009. Periodically, defendants modify the contracts with their resellers [*Id.* at ¶ 7]. The execution of these agreements is accomplished via the reseller's use of the portal. When a reseller accesses the portal, the reseller is presented with the new agreement and the reseller is given the option to click "I Accept" or "I Decline"[2] [*Id.* at ¶ 8]. The "accept" or "decline" options appear at the bottom of the agreement and the reseller must scroll through the document to reach those options [*Id.* at ¶ 9].

When a reseller clicks "I Accept," certain "click-to-accept" information is stored in the "back end" database for the portal, including the time and date when the reseller clicks "I Accept," the agreement that the reseller was viewing when it clicked "I Accept," and the internet protocol or "IP" address of the computer that was accessing the portal when the reseller clicks "I Accept" [*Id.* at ¶ 10]. The "back end" portion of the database is empty until a reseller clicks "I Accept," at which point the "click-to-accept" information is populated into the database [*Id.* at ¶ 11]. Each reseller is assigned a unique identification number which allows the "back end" database to trace information related to a specific reseller [*Id.* at ¶ 12]. According to defendants' portal information, someone with the correct login and password for Schumacher's account accepted the "Master Marketing Agreement 2009.05.19" (the "2009 Agreement") on May 29, 2009 at 12:31 PM [*Id.* at ¶ 15]. Further, someone with the correct login and password for Schumacher's

---

[2]This type of agreement is described as a "clickwrap" agreement whereby a website user must manifest assent to the terms of the agreement by clicking on an icon. *See Traton News, LLC v. Traton Corp.*, 528 F. App'x 525, 526 n.1 (6th Cir. 2013).

account accepted the "Master Marketing Agreement – ProconGPS.Doc" (the "2010 Agreement") on June 3, 2010, at 3:02 PM [*Id*. at ¶ 16].

On or about May 29, 2009, Procon sent plaintiff a new agreement, but Jim Schumacher did not execute it because he believed it was not in his best interest to do so [Doc. 66-1 at ¶ 10]. Defendants do not dispute that Mr. Schumacher did not sign the 2009 Agreement sent to him. Several days later, Procon placed the 2009 Agreement on the portal which required the user to click "I Accept" or "I Decline" before the user was permitted to access any other information or resources available on the portal [*Id*.]. Mr. Schumacher did not click on either option and left the website [*Id*.]. Mr. Schumacher contends that he did not use the defendants' customer portal after the 2009 Agreement was placed on the portal [Doc. 66-1 at ¶ 15]. Rather than using the portal, Mr. Schumacher contacted defendants' administration, usually via email, and defendants' personnel would take care of activation and registration [Doc. 66-1 at ¶ 15].

Plaintiff claims that none of its representatives authorized defendants to agree to the terms of the 2009 Agreement on its behalf [*Id*. at ¶ 12]. Further, Mr. Schumacher instructed his representative, Brett Wells, not to use the portal if the 2009 Agreement appeared on the screen upon login and to not click either "I Accept" or "I Decline" [*Id*. at ¶ 13]. Mr. Schumacher never authorized Mr. Wells to accept the terms of either the 2009 or the 2010 Agreement [*Id.* at ¶ 26]. Mr. Schumacher did not give Procon the impression that anyone else had authority to use the portal on his behalf or to execute an agreement on his behalf [*Id.*]. Mr. Wells agrees that he was not authorized to "accept" or "reject" the 2009 Agreement or any agreement on plaintiff's behalf [Doc. 66-2 at ¶¶ 6—7]. Mr.

4

Wells also states that he did not "accept" either the 2009 or the 2010 Agreement on behalf of plaintiff when accessing the portal [Doc. 66-2 at ¶ 9]. Plaintiff also disputes that it accepted the 2010 Agreement or that it was ever presented to plaintiff.

Plaintiff claims that in 2009 some of its customers stopped ordering from plaintiff and began purchasing the devices directly from defendants [Doc. 66-1 at ¶ 8]. Plaintiff claims that defendants sold the devices to plaintiff's customers at a lower price than plaintiff could offer and, in some cases, at prices which were less than or equal to the price at which plaintiff could purchase the devices [*Id.*]. Plaintiff complained to defendants' representatives on several occasions and referenced the provision in the 2005 Agreement whereby the parties agreed that plaintiff's customers belonged to plaintiff alone [*Id.* at ¶ 16]. Defendants' representatives assured plaintiff that they would look into it and promised it would not happen again [*Id.*].

In January 2011, defendants' sales manager, Neil Fisher, contacted Mr. Schumacher and said that he had learned plaintiff was selling a competitor's product [*Id.* at ¶ 18]. Mr. Schumacher responded that the 2005 Agreement did not prohibit plaintiff from doing so [*Id.*]. Mr. Fisher allegedly admitted that plaintiff had a special agreement with defendant that no one else had, that he was free to do what he wanted, and that they would "see what happens" [*Id.*]. Plaintiff alleges that defendants then called some of plaintiff's customers and told them that plaintiff was no longer selling the devices and that the customers should buy the devices directly from the defendants [*Id.* at ¶ 19].

On or about March 10, 2011, defense counsel sent plaintiff a letter with the 2010 Agreement and stated that plaintiff had entered into the 2009 Agreement on May 29,

2009, and entered into the 2010 Agreement on June 3, 2010 [*Id*. at ¶ 20]. The letter

further claimed that plaintiff had violated both agreements and defendants were

terminating the 2010 Agreement [*Id*.]. However, Mr. Schumacher had never seen the

2010 Agreement prior to receipt of the March 10, 2011 letter and did not agree to its

terms [*Id*. at ¶¶ 20, 25]. Thereafter, plaintiff never received any further commissions

from defendants [*Id*. at ¶ 20].

## II.     Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is

proper "if the movant shows that there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

moving party bears the burden of establishing that no genuine issues of material fact

exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Philip Morris Cos.*, 8

F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be

viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937,

942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a

motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of

allegations." *Curtis through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423

(E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. 317). To establish a genuine issue as to the

existence of a particular element, the non-moving party must point to evidence in the

record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

III.   **Analysis**

    A.   <u>Breach of Contract</u>

Plaintiff alleges that defendants breached the 2005 Agreement by (1) using plaintiff to gain access to plaintiff's customer list and then soliciting plaintiff's customers; (2) misrepresenting plaintiff's status with defendants to plaintiff's customer and then persuading those customers to buy directly from defendants; and (3) by establishing a price point which undercut plaintiff's pricing so that plaintiff could not compete with defendants [Doc. 31 at ¶ 33]. These allegations are based on the premise that the 2005 Agreement was the operative agreement between the parties and therefore

7

that plaintiff's customers were "the property of Jim Schumacher, LLC." Defendants, however, contend that the 2005 Agreement was superseded by plaintiff's acceptance of the 2009 Agreement on May 29, 2009, and that the 2009 Agreement was superseded by plaintiff's acceptance of the 2010 Agreement on June 3, 2010 [Doc. 55 at pp. 8—9]. Thus, defendants contend that plaintiff accepted and agreed to the terms of the 2009 and 2010 Agreements, while plaintiff contends that neither agreement was properly executed on its behalf. This is clearly a disputed issue of material fact.

Plaintiff contends that neither Mr. Schumacher nor Mr. Wells, the only representatives who knew the login credentials for the portal, accepted either the 2009 Agreement or the 2010 Agreement. Plaintiff also suggests that defendants had access to the portal and that "it is entirely possible" that one of defendants' representatives "accepted" the 2009 and 2010 Agreements on the portal system or manipulated the system so that it appeared that the Agreements were accepted [Doc. 67 at p. 12]. However, plaintiff offers no proof to support this theory and therefore it is entirely speculative.

Defendants argue that plaintiff cannot avoid summary judgment by asserting the failure to see, read, or sign the 2009 or 2010 Agreements. Defendants rely on two cases in which the terms of "clickwrap" agreements were enforced against a party who claimed lack of agreement to the terms, *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F. Supp. 2d 756 (N.D. Tex. 2006), and *Burcham v. Expedia, Inc.*, No. 4:07CV1963 CDP, 2009 WL 586513 (E.D. Mo. 2009). In *Burcham*, the plaintiff contended he did not remember accepting the conditions of use for the Expedia travel website. *Id*. at *2.

8

However, the plaintiff admittedly used the Expedia website to make travel arrangements and offered only speculation that someone else may have accepted the terms of use without his knowledge or assent. *Id*. at \*3—4. In the present case, the evidence is that neither Mr. Schumacher nor Mr. Wells accepted the terms of the 2009 or 2010 Agreements and that Mr. Schumacher discontinued use of the portal. The record is silent as to whether Mr. Wells continued to use the portal or not or whether the portal could be used by a reseller without accepting or rejecting the proposed agreement.

Similarly, in *Recursion Software*, the undisputed evidence showed that certain software could only be obtained from a website or installed after agreeing to the terms of a clickwrap license agreement and that the defendant incorporated the disputed software into its own products. 425 F. Supp. 2d at 783. In contrast, Mr. Schumacher did not continue to use the portal after seeing the 2009 Agreement on the portal and it is unclear whether Mr. Wells did or not. Thus, the Court cannot conclude as a matter of law whether plaintiff continued to use the portal thereby manifesting assent to the superseding agreements.

Defendants also argue that someone with apparent authority for plaintiff accepted the 2009 and 2010 Agreements because plaintiff's account was accessed via the plaintiff's username and password [Doc. 55 at p. 10—11]. Plaintiff contends that nothing was done to give defendants the impression that anyone other than Mr. Schumacher had the authority to execute an agreement on plaintiff's behalf so there was no third party with apparent authority [Doc. 67 at pp. 10—12].

9

Tennessee courts have identified three elements to establish apparent agency. Apparent agency exists when (1) the principal actually or negligently acquiesces in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment. *Mechs. Laundry Serv. v. Auto Glass Co. of Memphis,* 98 S.W.3d 151, 157 (Tenn. Ct. App. 2002) (quoting *White v. Methodist Hosp. S.,* 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992) (internal citations omitted)). "[A] principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agents own conduct has created the apparent authority." *Farmer v. South Parkway Assoc., L.P.*, No. W2012-02322-COA-R3-CV, 2013 WL 5424653, at *6 (Tenn. Ct. App. Sept. 25, 2013) (quoting *Barbee v. Kindred Healthcare Operating, Inc.*, 2008 WL 4615858, at *9 (Tenn. Ct. App. Oct. 20, 2008)). Questions of apparent authority are questions of fact and are therefore for the jury to determine. *Gunkel v. Secure One, Inc.*, No. 3:05-CV-220, 2006 WL 3524479, at *3 (E.D. Tenn. Dec. 6, 2006).

Considering the facts in the light most favorable to the plaintiff, neither Mr. Schumacher nor Mr. Wells "accepted" either the 2009 or the 2010 Agreement via the portal website and they were the only persons with the authority to access the portal on plaintiff's behalf. There is also no evidence that plaintiff had clothed anyone other than Mr. Schumacher or Mr. Wells with the appearance of authority to accept such agreements. Thus, it is unclear who accessed plaintiff's account on the portal and

10

"accepted" the Agreements.  It is also unclear whether this unknown person had actual or apparent authority to act on plaintiff's behalf.  Therefore, the Court cannot conclude as a matter of law which of the Agreements was the operative contract between the parties, nor can the Court determine whether a breach of one of those Agreements has occurred.  Accordingly, defendants' motion for partial summary judgment as to the breach of contract claims will be **DENIED**.

B.      Fraud

Plaintiff's fraud claim is based on the premise that defendants contracted with plaintiff in order to gain access to plaintiff's customers for defendants' benefit.  Defendants allegedly:

> …went directly to Plaintiff's customers, misrepresented Plaintiff's status with Defendants by lying to the customers and making untruthful statements that Plaintiff was no longer selling the product and/or that the customers should bypass Plaintiff and buy directly from Defendants, and unlawfully took those customers from Plaintiff.

[Doc. 31 at ¶ 43].  The only evidence in support of this allegation is Mr. Schumacher's statement that these misrepresentations occurred "immediately after" his phone call from Neil Fisher in January 2011, whereby defendants' representatives called plaintiff's customers and "told them I was no longer selling the devices" and "the customers should buy the devices directly from [d]efendants"  [Doc. 66-1 at ¶ 19].

Defendants argue that they terminated the 2010 Agreement as of March 10, 2011, because plaintiff was selling a competitor's product in violation of the superseding agreements.  Therefore, these allegedly fraudulent statements were true and cannot be the basis of a fraud claim [Doc. 55 at pp. 16—17].  In response, plaintiff argues that the 2005

11

Agreement was the operative agreement between the parties. The 2005 Agreement did not prevent plaintiff from selling competing products and thus, plaintiff argues, defendants had no grounds to terminate the 2005 Agreement and defendants' statements to the contrary were not true [Doc. 67 at p. 18].

Common law fraud requires (1) an intentional misrepresentation of a material fact; (2) knowledge of the representation's falsity; (3) an injury caused by reasonable reliance on the representation; and (4) the requirement that the misrepresentation involve a past or existing fact. *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006). Thus, "[f]raud requires an actual false statement." *Green v. Green*, No. 1:14-CV-43, 2015 WL 1206690, at *7 (E.D. Tenn. Mar. 16, 2015) (Collier, J.). Statements that plaintiff's customers should buy directly from the defendants are not actionable statements of material fact, but merely a sales pitch. *See Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F. 3d 923, 931 (6th Cir. 2006) ("Statements of future intention, opinion, or sales talk are generally not actionable because they do not involve representations of material past or present fact") (citing *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130 (Tenn. Ct. App. 1982)). To the extent that these allegations are the basis of plaintiff's fraud claim, plaintiff has not shown an intentional misrepresentation of a material fact and therefore cannot state a claim for fraud as a matter of law.

This leaves only the allegation that, between January 2011 and March 10, 2011, defendants told plaintiff's customers that plaintiff was no longer selling defendants' devices. Defendants argue that "such statements were true after March 10, 2011" when the parties' relationship was terminated [Doc. 55 at p. 16], a point that plaintiff does not

12

Case 3:12-cv-00625-TWP-CCS   Document 76   Filed 06/29/15   Page 12 of 13   PageID #: 672

really contest.  Correspondingly, defendants do not really contest that plaintiff has stated a claim for fraud with respect to any such statements made between January 2011 and March 10, 2011.  Accordingly, defendants' motion for partial summary judgment as to plaintiff's fraud claim is **GRANTED in part and DENIED in part**, whereby plaintiff's fraud claim is limited to alleged statements between January 2011 and March 10, 2011, that plaintiff was no longer selling defendants' products.

## IV.    Conclusion

For all the reasons set forth herein, there are genuine issues of material fact in dispute such that the Court cannot resolve plaintiff's breach of contract and fraud claims as a matter of law.  Accordingly, defendants' motion for partial summary judgment [Doc. 53] will be **DENIED as to the breach of contract claim and GRANTED in part and DENIED in part as to the fraud claim**.

IT IS SO ORDERED.

> _s/ Thomas W. Phillips_
> SENIOR UNITED STATES DISTRICT JUDGE